UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:16-cr-249-JMS-MJD-03 |
| v. | ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) |
| KIMBERLY GASKINS | (COMPASSIONATE RELEASE) |

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motion is:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☒ FACTORS CONSIDERED: See attached opinion.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:16-cr-00249-JMS-MJD |
| | ) | |
| KIMBERLY GASKINS, | ) | -03 |
| | ) | |
| Defendant. | ) | |

## ORDER

Defendant Kimberly Gaskins has filed a motion seeking compassionate release under § 603 of the First Step Act of 2018, which is codified at 18 U.S.C. § 3582(c)(1)(A). Dkt. 249. Ms. Gaskins seeks immediate release from incarceration. Dkt. 256. For the reasons explained below, her motion is **DENIED**.

**I.  Background**

*A.  Procedural History*

In December 2017, Ms. Gaskins was sentenced to 276 months of incarceration and 10 years of supervised release after she pled guilty to conspiracy to possess with intent to distribute and to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 846, and 851. Dkts. 124, 133. Judgment was entered on January 2, 2018. Dkt. 133.

Ms. Gaskins is 48 years old. She is currently incarcerated at FMC Carswell in Fort Worth, Texas. As of February 11, 2021, the Bureau of Prisons ("BOP") reports that 32 inmates and 3 staff members at FMC Carswell have active cases of COVID-19; it also reports that 739 inmates at FMC Carswell have recovered from COVID-19 and that 6 inmates at FMC Carswell have died from the virus. https://www.bop.gov/coronavirus/ (last visited Feb. 11, 2021). It also reports that 196 staff members and 212 inmates at FMC Carswell have been fully inoculated against COVID-19. *Id.*

2

Ms. Gaskins has been in custody for just under four-and-a-half years. The Bureau of Prisons ("BOP") lists her anticipated release date (with good-conduct time included) as June 22, 2036.

On August 10, 2020, Ms. Gaskins filed a pro se motion for compassionate release. Dkt. 249. She also filed a pro se supplement. Dkt. 252. The Court appointed counsel, dkt. 250, counsel filed a supporting memorandum, dkt. 256, the United States responded, dkt. 261, and Ms. Gaskins filed a reply, dkt. 264. At the Court's direction, the parties also submitted supplemental briefing addressing the fact that Ms. Gaskins had received the COVID-19 vaccination and its effect on Ms. Gaskins's request for compassionate release. Dkts. 269, 271. Thus, the motion is now ripe for decision.

*B. Ms. Gaskins' COVID-19 Diagnosis, Subsequent Symptoms, and Vaccination*

Ms. Gaskins is one of the FMC Carswell inmates who contracted COVID-19 and is also one of the FMC Carswell inmates who has received the COVID-19 vaccine. Ms. Gaskins contracted COVID-19 in late June 2020, possibly in connection with her work as an inmate nursing assistant. Ms. Gaskins's medical records suggest that she was quite ill and was confined to FMC Carswell's hospital unit for about a month. *See generally* dkt. 261-3. By July 24, 2020, however, she was denying any complaints and told medical staff that she was ready to get out of the hospital unit. *Id.* at 94. On July 27, she had no complaints and said she was "fine" with no cough or fever. *Id.* at 84. On July 28, she reiterated that she no longer had COVID-19 symptoms, but medical records reflect that she had been struggling with bradycardia (slower-than-normal heartrate) since July 7. *Id.* at 80–81. Medical staff ordered an EKG and 48-hour halter monitor test and referred her to cardiology. *Id.* at 81. Ms. Gaskins was discharged from the hospital unit on July 29, 2020, because she was going back to work as an inmate nursing assistant. *Id.* at 60.

Ms. Gaskins tested negative for COVID-19 on July 31, 2020. *Id.* at 57. Nonetheless, she continued to experience symptoms that might be connected to COVID-19. On August 19, 2020, she complained of increased shortness of breath while working. *Id.* at 47, 49. On examination, some

3

wheezing was observed. *Id.* Medical staff administered medication. *Id.* Symptoms persisted on August 27, and medical staff administered more medication. *Id.* at 44. On August 30, 2020, Ms. Gaskins complained that she was waking up with bouts of dry coughs; she also had a coughing fit during her nursing examination. *Id.* at 41. Her physician assessed as has having "[c]oughing due to asthma exacerbation" and advised continued use of oral steroids and inhalers. *Id.* On September 4, 2020, Ms. Gaskins complained that she was coughing all day and could not stop. *Id.* at 32. Medical staff ordered a chest X-ray. *Id.* On September 24, Ms. Gaskins was still complaining that she could not stop coughing; audible wheezing was noted during her examination. *Id.* at 26.

On October 5, 2020, Ms. Gaskins began a 2-day halter monitor test. *Id.* at 511. Upon reviewing the report and examining Ms. Gaskins, an outside cardiologist opined on November 13, 2020, that "[a]t this time there is no evidence of bradycardia and she has no symptoms," although he was not certain what had caused the change in her heart rhythm and rate. *Id.* at 508. He stated, "She is not on any medications that would cause bradycardia . . . . I have not hear[d] of COVID-19 resulting in bradyarrhythmias. Regardless at this point there have been no pauses, no clinically significant bradycardia and she is asymptomatic." *Id.*

On October 14, 2020, Ms. Gaskins complained of an "allergy attack," stating that she felt congested, had nasal and facial pressure, and had a runny nose and eyes. *Id.* at 17–19. She denied chest pain or shortness of breath. *Id.* at 17.

Ms. Gaskins had a chest X-ray on December 3, 2020. Dkt. 271-1 at 50. The radiologist found no radiographic evidence of an acute cardiopulmonary process, although there was a stable calcified nodule in the right upper lung. *Id.* On December 18, 2020, a BOP physician reviewed the chest X-ray report with Ms. Gaskins and requested a pulmonary consult due to her persistent cough and the abnormal lung finding. *Id.* at 2.

Ms. Gaskins received the first dose of the Pfizer COVID-19 vaccine on December 16, 2020. Dkt. 271-1 at 28. She received the second of two doses on January 3, 2021. *Id.*

As of January 5, 2021, Ms. Gaskins had no restrictions placed on her ability to work. *Id.* at 29.

## II.     Discussion

Ms. Gaskins seeks immediate release based on "extraordinary and compelling reasons" as set forth in 18 U.S.C. § 3582(c)(1)(A)(i). Her theory of relief has changed somewhat since her counsel filed the supporting memorandum because Ms. Gaskins has now received both doses of the COVID-19 vaccine. Currently, Ms. Gaskins contends that extraordinary and compelling reasons warrant her immediate release because the vaccine is not 100% effective and she could contract COVID-19 again, which could again lead to severe symptoms. Dkt. 269. Additionally, she contends that extraordinary and compelling reasons warrant her release because FMC Carswell failed to exercise proper care, which led to her contracting COVID-19 and currently suffering from chronic conditions, including "shortness of breath, wheezing, inability to take deep breaths, coughing fits, slow heartbeat, and headaches," none of which will be remedied by her receipt of the vaccine. *Id.* at 1. Ms. Gaskins also emphasizes that the long-term effects of COVID-19 are not known and that it is "very likely" that COVID-19 has caused permanent damage to her heart and lungs. *Id.* at 2. She maintains that, if she is released, she can seek treatment and proper care for her conditions. *Id.* Ms. Gaskins also contends that extraordinary and compelling reasons exist to release her because her trouble breathing will make serving her sentence much harsher, her physical and mental health have changed since she contracted COVID-19, she has suffered through harsh conditions over the last year, and she is suffering from long-lasting effects of COVID-19. *Id.* Finally, Ms. Gaskins argues that she would not be a danger to the community if released and that the sentencing factors in 18 U.S.C. § 3553(a) favor release. Dkt. 256 at 21–25.

In response, the United States does not contest that Ms. Gaskins exhausted administrative remedies as required by § 3582(c)(1)(A). Dkt. 261 at 5. It argues, however, that Ms. Gaskins has not shown an extraordinary and compelling reason warranting release. Dkts. 261, 271. It also argues that Ms. Gaskins would present a danger to the community if released and that the sentencing factors in § 3553(a) do not favor release.

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Under one exception to this rule, a court may reduce a sentence upon finding there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for a reduction based on "extraordinary and compelling reasons." Now, a defendant is also permitted to file such a motion after exhausting administrative remedies. *See* First Step Act of 2018, Pub. L.N. 115-391, 132 Stat. 5194, 5239 (2018). The amended version of the statute states:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). It directed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.* Before passage of the First Step Act, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c). U.S.S.G. § 1B1.13.

Section 1B1.13 sets forth the following considerations. First, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, consideration of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent they are applicable." U.S.S.G. § 1B1.13.

As to the first consideration, Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances (the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner). U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)," "[a]s determined by the Director of the Bureau of Prisons." *Id.*, Application Note 1(D).

The policy statement in § 1B1.13 addresses only motions from the Director of the BOP. *Id.* ("Upon the motion of Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . "). It has not been updated since the First Step Act amended § 3582(c)(1)(A) to address motions that are filed by prisoners. As a result, the Sentencing Commission has not yet issued a policy statement "applicable" to motions filed by prisoners. *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020). And, in the absence of an applicable policy statement, the portion of § 3582(c)(1)(A) requiring that a reduction be "consistent with the applicable policy statements issued by the Sentencing Commission" does not curtail a district court judge's discretion. *Id.* at 1180. Nonetheless, the Commission's analysis in § 1B1.13 can guide a court's discretion without being conclusive. *Id.* As to motions brought under the "catchall" provision in Subsection (D), district judges should give the Director of the BOP's analysis substantial weight (if he has provided such an analysis), even though those views are not controlling. *Id.*

Accordingly, the Court evaluates motions brought under the "extraordinary and compelling" reasons prong of § 3582(c)(1)(A) with due regard for the guidance provided in § 1B1.13 by deciding: (1) whether a defendant has presented an extraordinary and compelling reason warranting a sentence reduction; (2) whether the defendant presents a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) whether the applicable sentencing factors in § 3553(a) favor granting the motion.

Ms. Gaskins does not suggest that Subsections (A)-(C) of Application Note 1 to § 1B1.13 provide her with an extraordinary and compelling reason warranting release. Instead, she asks the Court to exercise its broad discretion to find an extraordinary and compelling reason warranting release in this case. The Court declines to do so.[1]

---

[1] In keeping with the Seventh Circuit's instruction in *Gunn*, 980 F.3d at 1180-81, the Court has considered the rationale provided by Ms. Gaskins's warden in denying Ms. Gaskins's administrative request for relief. The warden denied Ms. Gaskins's administrative request for relief before Ms. Gaskins received the

The risk that Ms. Gaskins faces from the COVID-19 pandemic is not an extraordinary and compelling reason to release her. Ms. Gaskins appears to have several medical conditions (including obesity and asthma) that could increase her risk of experiencing severe symptoms if she contracts COVID-19 again. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 11, 2021). However, Ms. Gaskins contracted COVID-19 more than 7 months ago. She has recovered from the worst of her symptoms and returned to her work as an inmate nursing assistant with no restrictions. Although she continues to experience some symptoms that could be related to her prior COVID-19 infection, those symptoms do not appear to be debilitating and the BOP appears to be taking proper steps to diagnose and treat those problems. Thus, Ms. Gaskins has not shown extraordinary and compelling reasons warranting a sentence reduction. *See, e.g.*, *United States v. Weatherspoon*, No. 2:11-cr-9-JMS-CMM-07, dkt. 894 (S.D. Ind. July 7, 2020) (finding no extraordinary and compelling reason where defendant had conditions putting him at risk for severe COVID-19 symptoms and had been hospitalized after testing positive for COVID-19, but had since recovered); *United States v. Wyatt*, No. 3:17-cr-11-RLY-MPB-02, dkt. 165 (S.D. Ind. Sept. 3, 2020) (finding no extraordinary and compelling reason where defendant had conditions putting him at risk for severe COVID-19 symptoms and had tested positive for COVID-19 but remained asymptomatic); *United States v. VanBuren*, No. 2:13-cr-16-JMS-CMM-01, dkt. 701 (S.D. Ind. Nov. 25, 2020) (finding no extraordinary and compelling reason where defendant had conditions putting him at risk for severe COVID-19 and had tested positive but only had a non-severe cough and a short-lived fever); *United States v. Young*, No. 3:15-cr-38-RLY-CMM-03, dkt. 139 (denying motion to reconsider and finding no extraordinary and compelling reason warranting release where defendant claimed to be experiencing chest pains and difficulty breathing several months after

---

COVID-19 vaccine. *See* dkt. 256-12. Thus, the warden's decision provides little guidance to the Court's analysis.

his COVID-19 diagnosis because the symptoms were not severe or debilitating). The Court sympathizes with how difficult Ms. Gaskins's bout with COVID-19 must have been and understands that she continues to face health difficulties that may be related to her COVID-19 infection. However, early release is not a remedy or reward for contracting COVID-19.

Ms. Gaskins's concern about reinfection does not change the result. The Court recognizes that FMC Carswell experienced a serious outbreak of COVID-19 and that a significant number of inmates and staff members there still have active cases of COVID-19. Regardless, Ms. Gaskins's reliance on the possibility that she will be reinfected and suffer severe symptoms is speculative. *See* https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/quarantine.html (last visited Feb. 11, 2021) ("Cases of reinfection of COVID-19 have been reported but are rare."). To date, this Court has declined to find extraordinary and compelling circumstances warranting a sentence reduction when a defendant has recovered from COVID-19—even when that defendant has risk factors for severe symptoms. *See*, *e.g.*, *Wyatt*, No. 3:17-cr-11-RLY-MPB-02, dkt. 165 (S.D. Ind. Sept. 3, 2020); *United States v. Gevirtz*, No. 1:17-cr-68-RLY-MJD-01, dkt. 68 (S.D. Ind. Sept. 14, 2020); *United States v. Young*, No. 1:10-cr-3-SEB-DML-17, dkt. 1540 (S.D. Ind. July 27, 2020); *United States v. Swain*, No. 2:15-cr-19-JMS-CMM-06, dkt. 781 (S.D. Ind. June 3, 2020). Ms. Gaskins's argument about reinfection is even more speculative than in cases where the Court has denied relief because she is one of the fortunate people who received a COVID-19 vaccine quite soon after it became available to the public. On these facts, the Court cannot find extraordinary and compelling reasons based on the risk of reinfection.

Finally, the Court understands that Ms. Gaskins believes that she contracted COVID-19 because of the BOP's negligence. As noted above, release is not the proper remedy. Rather, such a complaint might conceivably support a civil suit for relief in her district of incarceration.

Given the Court's determination that Ms. Gaskins has not shown extraordinary and compelling reasons to justify her release, the Court need not address whether Ms. Gaskins is a danger to the community and whether the § 3553(a) factors weigh in favor of her release.

### III. Conclusion

For the reasons stated above, Ms. Gaskins's motion for compassionate release, dkt. [249], is **denied**.

**IT IS SO ORDERED.**

Date: 2/16/2021

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel